# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Sandy Lake Band of Mississippi Chippewa,<br><br>           Plaintiff,<br><br>v.<br><br>United States of America; Ken Salazar, as Secretary of the Interior; Larry Echo Hawk, as the Assistant Secretary for Indian Affairs; Jodi Gillette, as Acting Deputy Assistant Secretary for Policy and Economic Development, Indian Affairs; and Terrence L. Virden, as Regional Director, Midwest Regional Office, Bureau of Indian Affairs,<br><br>           Defendants. | Civil No. 10-3801 (DWF/LIB)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Lester J. Marston, Esq., Rapport and Marston, and Suzanne W. Kvas, Esq., Lehmann & Lutter, PA, counsel for Plaintiff.

Bahram Samie, Assistant United States Attorney, United States Attorney's Office; and Kenneth Rooney, Esq., United States Department of Justice, Environment and Natural Resources Division, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by the Defendants. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Sandy Lake Band of Mississippi Chippewa ("Sandy Lake Band" or "Band") describes itself as "a federally recognized Indian tribe that has never been lawfully terminated by an Act of Congress." (Compl. ¶ 4.)[1] Between 1825 and 1867, the United States entered into ten (10) treaties that included the Sandy Lake Band. (*Id.* ¶¶ 6-20.) In addition to those treaties, in 1915 President Woodrow Wilson issued Executive Order No. 2144, which created the Sandy Lake Reservation "for the use and occupancy of a band of Chippewa Indians, now living thereon, and for such other Indians as the Secretary of the Interior may see fit to settle thereon." (*Id.* ¶ 29, Ex. 22.)

In 1934, Congress passed the Indian Reorganization Act, 25 U.S.C. § 461, *et seq.* ("IRA"). Section 16 of the IRA authorizes tribes to organize a tribal government by adopting a written constitution which becomes effective when ratified by a majority vote of the adult members of a tribe at a special election called by the Secretary of the United States Department of the Interior ("Secretary") for that purpose. 25 U.S.C. § 476. After passage of the IRA, the Secretary promulgated regulations for the calling and conducting of constitutional elections under 25 U.S.C. § 476. Those regulations are codified in Title 25 of the Code of Federal Regulations, Part 81.

---

[1] Plaintiff filed an Amended Complaint on June 2, 2011, the day before the hearing before the Court on Defendants' Motion to Dismiss. (*See* Doc. No. 33.) As acknowledged by Plaintiff during the June 3, 2011 hearing, the Amended Complaint was not filed within the time limit permitted for amending as a matter of course under Fed. R. Civ. P. 12(a)(1). Plaintiff was therefore required to either obtain the opposing parties' written consent or leave of the Court before filing. Plaintiff did not do so, and therefore the original Complaint (Doc. No. 1) remains the operative complaint in this action.

On July 20, 1936, a majority of the tribes and bands of Chippewa Indians residing on various Indian reservations in Minnesota organized a single tribal government under a written constitution, the Constitution of the Minnesota Chippewa Tribe ("MCT Constitution").  (Compl. ¶ 40; Doc. No. 16, Ex. 2.)  A polling place was maintained at Sandy Lake to allow members of the Sandy Lake Band to vote on the proposed constitution, but no members of the Sandy Lake Band cast a ballot.  (Decl. of Lester J. Marston ¶ 3, Ex. C.)  The MCT Constitution states that it "shall apply to the White Earth, Leech Lake, Fond du Lac, Bois Fort (Nett Lake), and Grand Portage Reservations, and the nonremoval Mille Lac Band of Chippewa Indians."  (Doc. No. 16, Ex. 2 at 1.)

Article XI of the MCT Constitution provides that "[e]ach reservation and district or community may govern itself in local matters in accordance with its customs and may obtain, if it so desires, from the Tribal Executive Committee a charter setting forth its organization and powers."  (*Id.* at 5.)  On February 16, 1939, the Chippewa Indians of the Mille Lacs Reservation, pursuant to Article XI, ratified and accepted the Charter of Organization of the Mille Lacs Band of Chippewa Indians ("MLB Charter").  (Doc. No. 16, Ex. 3 at 7.)  The MLB Charter defines membership in the Mille Lacs Band of Chippewa Indians as consisting of

> [a]ll Chippewa Indians permanently residing on the Mille Lacs Reservation and at, or near, the Villages of Isle, Danbury, East Lake and Sandy Lake, Minnesota, on the adoption of this Charter, and their descendants, whose names appear on the approved roll of the Chippewa Tribe as determined by Sections 2 and 3 of the Constitution of the Minnesota Chippewa Tribe.

(*Id.* at 2.)  The MLB Charter also establishes a governing body known as the Mille Lacs Council and provides that the Sandy Lake District shall have one Councilman on that Council.  (*Id.* at 2-3.)

On May 29, 1980, a Field Solicitor for the United States Department of the Interior, in response to a request from the Bureau of Indian Affairs ("BIA") for an opinion regarding the jurisdictional status of the Sandy Lake Reservation, stated that "the Chippewas residing at Sandy Lake have been considered Chippewa of the Mississippi and part of the group known as the Mille Lacs Band" and that "the Mille Lacs Band is the political successor of the historic Sandy Lake Band."  (Compl. ¶ 43, Ex. 23.)

On June 24, 1988, the Chief of the Division of Tribal Government Services sent a letter to Clifford Skinaway, Jr., who had submitted an incomplete and uncertified petition for acknowledgment as an Indian tribe for Sandy Lake.  (Doc. No. 16, Ex. 1, Decl. of R. Lee Fleming ¶ 25.)  That letter provided instruction regarding the federal acknowledgment process, which is codified at 25 C.F.R. § 83, and stated that "[i]n order to officially place your group on our priority register, we will need a formal expression from the group's governing body which states specifically that the group is petitioning for Federal acknowledgment and that the action is authorized by the group's governing body."  (*Id.*)  Letters from the BIA were also sent to members of the Sandy Lake Band on January 24, 1991; August 25, 1995; and June 21, 1997.  (*Id.* ¶¶ 26, 28, 30.)  Between February 2002 and August 2006, individuals within the BIA sent ten (10) additional letters to the Sandy Lake Band addressing the federal acknowledgment procedure.  (*Id.* ¶¶ 31-40.)

On July 10, 2007, the Sandy Lake Band sent substantively identical but separate letters to the Assistant Secretary for Indian Affairs and the Superintendent of the Minnesota Agency of the BIA requesting reorganization under Section 16 of the IRA. On or about July 27, 2007, the Superintendent of the Minnesota Agency of the BIA sent a letter in response enclosing an August 1, 2006 letter from the Associate Solicitor of Indian Affairs. The August 1, 2006 letter stated that "it is clear that the Sandy Lake Band would not as a matter of law be eligible for acknowledgment under the Department's existing regulations" but "[s]ince the Sandy Lake Band has not petitioned the Department for acknowledgment, this letter can not be construed as a determination under [25 C.F.R. Part 83]." (*Id.*)

The Sandy Lake Band appealed the July 27, 2007 response to the Midwest Regional Director for the BIA. (Compl. ¶ 48.) The Regional Director stated in an August 28, 2007 letter that the July 27, 2007 letter "was not a decision but a reiteration of the Department's position regarding the Sandy Lake Band" and therefore was not appealable. (*Id.* ¶ 47, Ex. 25.) The August 28, 2007 letter also stated: "Previously you have been advised that you may seek recognition through the federal acknowledgment process or by special legislation. Until there is a determination through the federal acknowledgement process or legislative recognition of your group, the Department's position remains the same." (*Id.*)

On September 25, 2007, the Sandy Lake Band filed an appeal of the August 28, 2007 letter with the Interior Board of Indian Appeals, Office of Hearings and Appeals ("IBIA"). (Compl. ¶ 49.) On the same day, the Assistant Secretary for Indian Affairs

5

responded to the Sandy Lake Band's July 10, 2007 letter. (*Id.* ¶ 50, Ex. 26.) The Assistant Secretary's letter also enclosed the August 1, 2006 letter and stated that: "Previously you have been advised that you may seek recognition through the Federal acknowledgment process or by congressional legislation. Until there is a final determination through 25 CFR Part 83 or legislative recognition of your group, the Department's position remains the same." (*Id.*) The Regional Director then moved to dismiss the Sandy Lake Band's appeal before the IBIA on the grounds that the Assistant Secretary's September 25, 2007 letter was a final decision for the Department of the Interior which the IBIA was precluded from reviewing. (Compl. ¶ 50.) The IBIA dismissed the appeal by an order dated March 21, 2008. (*Id.* ¶ 51, Ex. 27.)

The Sandy Lake Band initiated this action on September 1, 2010, asserting claims for Violation of the Federally Recognized List Act of 1994; Violation of the IRA; Violation of the Administrative Procedures Act; Violation of the Fifth Amendment; and Breach of Trust, List Act, and IRA.[2] The Sandy Lake Band characterizes these claims as "seek[ing] review of the Federal Defendants' Decision denying the Tribe's request for an IRA Election" and as "aris[ing] from the Federal Defendants' denial of the Tribe's Request for an IRA Election." (Doc. No. 26 at 17-18.) The Defendants moved to dismiss, arguing that the Sandy Lake Band is not eligible to request an IRA election, the

---

[2] The Sandy Lake Band also asserted claims for Breach of Trust, Treaty Rights (Sixth Claim) and Money Damages (Seventh Claim). In response to Defendants' motion, however, the Sandy Lake Band agreed with Defendants that those claims should have been brought in the Federal Claims Court. Accordingly, the Court will dismiss the Sandy Lake Bands' Sixth and Seventh Claims without prejudice.

Court lacks subject matter distinction because the Sandy Lake Band failed to exhaust administrative remedies, the United States has not waived sovereign immunity, and that the Minnesota Chippewa Tribe and the Mille Lacs Band are indispensible parties.  The Court first addresses subject matter jurisdiction.

## DISCUSSION

**I.      Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle by which to seek dismissal of a claim for lack of federal subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6).  *Id*.  In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of Rule12(b)(6).  *Id*.

Here, the Defendants raise a factual challenge to jurisdiction, asserting that because the Sandy Lake Band failed to exhaust its administrative remedies, this Court lacks subject matter jurisdiction.  Under the doctrine of administrative review, a party is not entitled to judicial review until after the prescribed administrative remedy has been exhausted.  *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).  Proper exhaustion of

administrative remedies is required, meaning all steps the agency holds out must be used. *Id.* at 89.

## II. Regulatory Framework

The regulations promulgated by the Department of the Interior for requesting IRA elections contain the following definition:

> Tribe means: (1) Any Indian entity that has not voted to exclude itself from the Indian Reorganization Act and is included, or is eligible to be included, among those tribes, bands, pueblos, groups, communities, or Alaska Native entities listed in the FEDERAL REGISTER pursuant to § 83.6(b) of this chapter as recognized and receiving services from the Bureau of Indian Affairs; and (2) any group of Indians whose members each have at least one-half degree of Indian blood for whom a reservation is established and who each reside on that reservation. Such tribes may consist of any consolidation of one or more tribes or parts of tribes.

25 C.F.R. § 81.1(w). Section 81.1 thus limits eligibility for requesting IRA elections to Indian entities included, or eligible to be included, among those that have received federal acknowledgement. The federal acknowledgment process includes procedures for entities, such as the Sandy Lake Band, that claim previous federal recognition as demonstrated by treaties and executive orders. *See* 25 C.F.R. §§ 83.7, 83.8. The Defendants assert that because the Sandy Lake Band has never filed a petition with the agency tasked with federal acknowledgment, the Band has failed to exhaust its administrative remedies.

The Sandy Lake Band asserts that with the dismissal of its appeal before the IBIA, all available administrative remedies have been exhausted. The Sandy Lake Band admits that it has never filed a petition for federal acknowledgment, but contends that it need not be presently federally recognized in order to be eligible for an IRA election and that it

8

seeks review only of the Defendants' decision denying the election request. The Band argues that 25 C.F.R. § 81.1(w) conflicts with the definition of Indian tribe contained in 25 U.S.C. § 479, adds requirements for qualifying as an eligible Indian tribe that are not found in the statute, and is therefore invalid and void. The Sandy Lake Band asserts that because it was under federal jurisdiction on June 18, 1934, it satisfies the definition of Indian tribe contained in Section 479 and is eligible for an IRA election.

The Court concludes that the Sandy Lake Band has failed to exhaust its administrative remedies. The Court respectfully rejects the Band's contention that 25 C.F.R. § 81.1(w) contradicts the definition of Indian tribe in 25 U.S.C. § 479. Rather, by requiring an entity seeking an IRA election to first request federal acknowledgment, the regulations ensure that the evidence the Sandy Lake Band offers in support of its claim that it qualifies as an Indian tribe under Section 479 will be presented to the appropriate agency with the requisite expertise and established regulatory process.[3] The Defendants have repeatedly and consistently informed the Sandy Lake Band that it must file a petition for federal acknowledgment as the first step in the Band's effort to seek an IRA election, but the Band has failed to do so. Accordingly, the Band has failed to

---

[3] The Court also respectfully rejects the Sandy Lake Band's argument that 25 C.F.R. § 81.1(w) contradicts 25 U.S.C. § 479 as interpreted by the Supreme Court in *Carcieri v. Salazar*, 555 U.S. 379 (2009). *Carcieri* held that the term "now under Federal jurisdiction" refers to Indian tribes under Federal jurisdiction in 1934. The effect of this holding is that the Secretary may not expand the definition of Indian tribes eligible for an IRA election to include those not under Federal jurisdiction in 1934. It does not follow from this result that requiring an entity to first seek federal acknowledgment before requesting an IRA election exceeds the authority granted to the Secretary.

exhaust its administrative remedies and this Court lacks subject matter jurisdiction over the Band's claims that relate to the requested IRA election.

The Sandy Lake Band acknowledges that each of the five claims at issue in this action arise from the Defendant's denial of the Band's request for an IRA election. The Court having concluded that subject matter jurisdiction does not exist for any of those claims, the Sandy Lake Band's Complaint must be dismissed.[4] The Court therefore need not reach the Defendants' remaining arguments for dismissal.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. [13]) is **GRANTED**.

2. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 1, 2011
           s/Donovan W. Frank
           DONOVAN W. FRANK
           United States District Judge

---

[4] The Court notes that while the Complaint is dismissed without prejudice, the proposed Amended Complaint fails to cure the lack of subject matter jurisdiction over the Sandy Lake Band's claims.